| | | |
|---|---|---|
| **AMBER MONTGOMERY et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 16 C 7889** |
| **v.** | ) | |
| | ) | **Chief Judge Rubén Castillo** |
| **MARKEL INTERNATIONAL** | ) | |
| **INSURANCE COMPANY LIMITED et** | ) | |
| **al.,** | ) | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

Amber Montgomery ("Montgomery"), as Special Administrator for the Estate of Kyle C.

Matthews, Tremeice Dangerfield ("Dangerfield"), Valell Corporation d/b/a Carolyn's Lounge

("Carolyn's Lounge" or "Carolyn's"), and Carolyn Burton ("Burton"), individually and as

President of Carolyn's (collectively, "Plaintiffs"), bring this action against Markel International

Insurance Company Limited ("Markel"), and Certain Underwriters at Lloyd's, London

Subscribing to Certificate No. LL-41973, Syndicate 958 ("Lloyd's Syndicate 958" or "Syndicate

958") (collectively, "Defendants") for the alleged breach of two insurance policies issued to

Carolyn's. (R. 33, Second Am. Compl.) Defendants move to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(1) on the ground that the Court lacks subject-matter jurisdiction because

Plaintiffs have not adequately alleged complete diversity between the parties. (R. 38, Defs.' Corr.

Joint Mot.) For the reasons set forth below, the Court grants Defendants' motion and grants

Plaintiffs leave to amend.

## BACKGROUND

This insurance coverage suit stems generally from bodily injuries and a fatality that occurred during a violent altercation on October 30, 2011, at Carolyn's Lounge in Chicago.[1] (R. 33, Second Am. Compl. ¶¶ 1-2.) During that altercation, Dangerfield was severely injured, and Kyle Matthews, Montgomery's decedent, was killed. (*Id.*) These events gave rise to an Illinois circuit court lawsuit against Carolyn's and others, captioned *Montgomery v. Valell Corp.*, No. 2013-L-011559 (Ill. Cir. Ct. filed 2013) (the "Underlying Lawsuit"). (*Id.*) Carolyn's was insured under a $1 million per-occurrence and $2 million aggregate commercial general-liability insurance policy issued by Markel (the "Markel Policy") and a $1 million liquor-liability insurance policy issued by Lloyd's Syndicate 958 (the "Lloyd's Policy"). (*Id.* ¶¶ 3-4, 23, 29.) Plaintiffs allege that the claims asserted against Carolyn's in the Underlying Lawsuit were within the scope of coverage provided by both the Markel Policy and the Lloyd's Policy. (*Id.* ¶¶ 28, 31.)

As a defendant in the Underlying Lawsuit, Carolyn's timely tendered its defense to, and sought indemnity from, both Markel and Lloyd's Syndicate 958. (*Id.* ¶¶ 3-5.) Both denied coverage and refused to defend. (*Id.* ¶ 6.) As a result, Carolyn's was unable to defend itself in the Underlying Lawsuit, and an order of default was entered against it on March 17, 2016. (*Id.* ¶¶ 8, 10.) A judgment for some $3 million against Carolyn's as well as Burton individually followed. (*Id.* ¶ 11.) Defendants have paid nothing by way of indemnity to satisfy the judgment. (*Id.* ¶ 12.) As a result, the judgment remains outstanding, and both Carolyn's and Burton, as the judgment-debtors, remain legally obligated to pay the amount. (*Id.*) As tort claimants in the Underlying Lawsuit, and now judgment-creditors, Montgomery and Dangerfield are interested parties to this insurance coverage dispute under 28 U.S.C. § 2201 and Illinois law. (*Id.* ¶ 13.) Plaintiffs allege

---

[1] Unless otherwise noted, these facts are recounted as alleged by Plaintiffs in their Second Amended Complaint (R. 33).

that by failing to either defend or indemnify, both Markel and Lloyd's Syndicate 958 breached their obligations under the respective insurance policies. (*Id.* ¶¶ 54-73.)

Carolyn's is incorporated in the State of Illinois with its principal place of business in Cook County, Illinois. (*Id.* ¶ 17.) Montgomery, Dangerfield, and Burton all reside and are domiciled in Cook County, Illinois. (*Id.* ¶ 16.) Markel is an insurance company incorporated in England and Wales, with its principal place of business and corporate headquarters in Glen Allen, Virginia. (*Id.* ¶ 18.) Plaintiffs allege that Lloyd's is "an insurance company composed of syndicates that underwrite insurance in a marketplace known as Lloyd's of London," that "Lloyd's is incorporated under the laws of England with their [sic] principal place of business located in London, England," and that "[t]he syndicate involved for Lloyd's in this matter is Syndicate 958 which contains no corporations or individuals that are citizens of Illinois." (*Id.* ¶ 19.) In their Second Amended Complaint ("SAC"), Plaintiffs invoke subject-matter jurisdiction in this Court pursuant to 28 U.S.C. § 1332(a), alleging that "Plaintiff[s] and Defendants are in complete diversity and the amount in controversy exceeds $75,000." (*Id.* ¶ 20.)

## PROCEDURAL HISTORY

Plaintiffs Montgomery and Dangerfield filed this suit on August 5, 2016, originally naming Markel and "Underwriters at Lloyd's, London" as defendants. (R. 1, Compl.) On September 2, Markel moved to dismiss under Rule 12(b)(1), arguing that Plaintiffs failed to establish this Court's subject-matter jurisdiction under 28 U.S.C. § 1332(a). (R. 18, Markel Mot.) On September 7, Lloyd's Syndicate 958 separately moved to dismiss under Rule 12(b)(7) for failure to join an indispensable party under Rule 19. (R. 23, Lloyd's Mot.) It argued that the suit should be dismissed pursuant to Rule 19(b) because Carolyn's—the named insured under both the Markel Policy and the Lloyd's Policy—was an indispensable party to the litigation, but

joining Carolyn's as a defendant would destroy diversity because there would then be Illinois citizens on both sides. (*Id.* at 2-3; R. 25, Lloyd's Mem.) Syndicate 958 also asserted that it had been "incorrectly denominated as Underwriters at Lloyd's, London" in the complaint. (R. 25, Lloyd's Mem. at 1.)

On September 12, Plaintiffs filed a First Amended Complaint ("FAC") that added both Carolyn's and Burton (the President of Carolyn's) as plaintiffs and renamed the Lloyd's defendant from "Underwriters at Lloyd's, London" to "*Certain* Underwriters at Lloyd's, London *Subscribing to Certificate No. LL-41973*." (R. 27, First Am. Compl. at 1 (emphases added).) Shortly thereafter, Lloyd's Syndicate 958 voluntarily withdrew its motion to dismiss, and the Court denied Markel's motion to dismiss as moot. (R. 29, Min. Entry.) Plaintiffs filed their operative SAC on October 7, again renaming the Lloyd's defendant—this time from "Certain Underwriters at Lloyd's, London Subscribing to Certificate No. LL-41973" to "Certain Underwriters at Lloyd's, London Subscribing to Certificate No. LL-41973, *Syndicate 958*." (R. 33, Second Am. Compl. at 1 (emphasis added).) On November 8, 2016, Defendants jointly filed the present joint motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction (R. 38), which is now fully briefed. (R. 40, Pls.' Resp.; R. 41, Defs.' Reply; R. 45, Pls.' Sur-reply.)

## LEGAL STANDARD

Subject-matter jurisdiction is a court's "power to decide the claim before it." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017). A motion to dismiss under Rule 12(b)(1) disputes the existence of the Court's subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). The party asserting jurisdiction bears the burden of establishing that it exists. *Farnik v. F.D.I.C.*, 707 F.3d 717, 721 (7th Cir. 2013). Challenges to subject-matter jurisdiction can be either "facial" or "factual." *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009).

Facial challenges only call into question the sufficiency of allegations supporting jurisdiction; as such, they "require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Id.* at 443. Consistent with other challenges to the sufficiency of pleadings, a court evaluating a facial challenge must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008) (citation omitted). In a facial challenge, "the court does not look beyond the allegations in the complaint." *Apex Digital*, 572 F.3d at 444.

By contrast, a factual challenge is where the "the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *Id.* (citation omitted). In a factual challenge, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."[2] *Id.* (citation omitted). "[N]o presumptive truthfulness attaches to plaintiff's allegations," and the Court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted); *see also Garcia v. Farmers Ins. Exch.*, 121 F. Supp. 2d 667, 668 (N.D. Ill. 2000) ("The presumption of correctness . . . accord[ed] to a complaint's allegations on the jurisdictional issue falls away once a defendant proffers evidence that calls the court's jurisdiction into question.").

## ANALYSIS

### I.       Diversity of Citizenship as to Lloyd's Syndicate 958

Defendants argue that the Court lacks subject-matter jurisdiction because Plaintiffs have not adequately alleged complete diversity of citizenship between the parties. More specifically,

---

[2] A district court's ability to consider evidence beyond the pleadings in this context "derives from the importance of limiting federal jurisdiction." *Apex Digital*, 572 F.3d at 444.

Defendants contend that pursuant to *Indiana Gas Co. v. Home Insurance Co.*, 141 F.3d 314 (7th Cir. 1998), Lloyd's insurance underwriting syndicates are treated as limited partnerships for jurisdictional purposes and Plaintiffs must therefore affirmatively allege the citizenship of every member of Defendant Lloyd's Syndicate 958 in order to establish complete diversity. (R. 39, Defs.' Mem. at 5-6.) According to Defendants, Plaintiffs' failure to affirmatively allege the citizenship of every syndicate member means they have failed to meet their burden of establishing this Court's subject-matter jurisdiction. (*Id.* at 6.) Plaintiffs argue in response that Syndicate 958 should be treated as a corporation rather than a limited partnership and that they have adequately pled the corporate citizenship(s) of Syndicate 958 under 28 U.S.C. § 1332(c)(1). (R. 40, Pls.' Resp. at 8-12.) Alternatively, Plaintiffs argue that they are not actually suing a Lloyd's underwriting syndicate, and that the Corporation of Lloyd's is the defendant and counterparty on the Lloyd's Policy. These arguments are addressed in turn.

As a preliminary matter, the Court determines that Defendants are raising only a facial rather than factual attack on subject-matter jurisdiction. Defendants challenge only the sufficiency of Plaintiffs' allegations—in particular, whether Plaintiffs have sufficiently alleged the citizenship of Lloyd's Syndicate 958. Defendants neither contest the truth of any of Plaintiffs' jurisdictional allegations nor present the Court with outside facts calling those allegations into question. Consequently, the Court need only "look to the complaint" to resolve Defendants' motion. *Apex Digital*, 572 F.3d at 443.[3]

---

[3] The Court may nevertheless consider the contents of "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Before turning to the merits of Defendants' motion, it is also helpful to shed light on the nature of what is often generically referred to as "Lloyd's" or "Lloyd's of London," for this arcane subject can be the source of much confusion. When this Court last had occasion to do so, it explained as follows:

> The structure of the insurance underwriting entity commonly referred to as Lloyd's of London is arachnoid. Originating in the late 17th century in a London coffee house run by Edward Lloyd where ship owners, captains, and insurance underwriters gathered to buy and sell marine insurance, Lloyd's is a "self-regulated" insurance market, a non-profit organization funded by its members[.] The current structure of Lloyd's was established by the English Parliament through the Lloyd's Act of 1871 and five amendments to the Act, the most recent of which was passed in 1982[.] Lloyd's of London as a whole consists of three separate but related entities: the Corporation or Society of Lloyd's, the Market, and the Council of Lloyd's[.]

> The Corporation does not participate directly in any underwriting or reinsurance activities. Instead, the Corporation creates a place (the Market) in which underwriting activities take place. . . . The Corporation is a "hollow shell" advancing the interest of maintaining the Market[.] The Corporation also serves to some degree as a gatekeeper to the Market: only those who are members of Lloyd's (or "Names") can invest in the insurance syndicates that trade through Lloyd's. . . . .

> The Market is the segment of Lloyd's within which the underwriting and reinsurance actually takes place. The members provide capital and enter into insurance contracts by joining "syndicates," unincorporated associations that are the primary actors operating in the Market. Only by becoming a member may an individual underwrite through a Lloyd's of London syndicate[.] A member is severally liable for his or her share of each underwriting endeavor to the full extent of his or her assets[.] Presumably, a member also receives a proportionate share of the premiums collected or profits that may accrue. The syndicates are controlled by "managing agents," . . . which act as agents of both the Corporation of Lloyd's and the members. The managing agent decides which policies the syndicate should underwrite, sets the premium rates, collects premiums and pays claims to the insured.

*Ashenden v. Lloyd's of London* ("*Ashenden I*"), 934 F. Supp. 992, 996-97 (N.D. Ill. 1996) (citations omitted). As relevant here, two features of Lloyd's bear emphasizing. First, the Corporation or Society of Lloyd's—the entity that oversees the insurance marketplace—does not itself underwrite insurance. *Id.*; *see also Soc'y of Lloyd's v. Estate of McMurray*, 274 F.3d 1133,

1134 (7th Cir. 2001) ("Lloyd's is the regulator of an English insurance market in London. It is not an insurer."); *Soc'y of Lloyd's v. Ashenden* ("*Ashenden II*"), 233 F.3d 473, 478 (7th Cir. 2000) ("Lloyd's, contrary to popular understanding, is not an insurer, but rather the overseer of the London insurance market."). Second, so-called "Lloyd's" insurance is actually underwritten by one or more "syndicates," each comprised of participating members that are known as "Names." *See Ashenden II*, 233 F.3d at 478 ("The actual insurance is written by syndicates of 'names.'"); *Ind. Gas*, 141 F.3d at 316 ("A syndicate that underwrites insurance through the exchange at Lloyd's can have hundreds of members (known as 'names'), located throughout the world[.]").

Plaintiffs' SAC invokes subject-matter jurisdiction in this Court pursuant to the diversity statute, 28 U.S.C. § 1332(a). (R. 33 ¶ 20.) For this Court to have jurisdiction under § 1332(a), there must be "complete diversity between all plaintiffs and all defendants."[4] *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). That is, "no plaintiff may be from the same state as any defendant." *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 803 (7th Cir. 2009). Defendants do not attack or question the jurisdictional allegations regarding Plaintiffs or Defendant Markel, according to which Plaintiffs are all citizens of Illinois (and only Illinois) and Markel is a citizen of England, Wales, and Virginia.[5] But Defendants contend that Plaintiffs must

---

[4] Defendants do not dispute, and the Court finds, that the amount in controversy satisfies § 1332(a). Given that Plaintiffs seek insurance coverage as to a $3 million state-court judgment against them, (R. 33, Second Am. Compl. ¶ 11), the matter in controversy well exceeds $75,000 in value.

[5] The SAC alleges that all of the individual Plaintiffs are domiciled in Cook County, Illinois, (R. 33 ¶ 16), which means they are citizens of Illinois for diversity purposes. *Myrick v. WellPoint, Inc.*, 764 F.3d 662, 664 (7th Cir. 2014) ("Citizenship means domicile[.]"). The SAC alleges that Carolyn's, the only corporate Plaintiff, is incorporated in Illinois with its principal place of business in Cook County, Illinois. (R. 33 ¶ 17.) It too is thus a citizen of Illinois, because a corporation is deemed a citizen of both its state(s) of incorporation and the state where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). As to Defendant Markel, Plaintiffs allege that it is incorporated in England and Wales with its principal place of business in Virginia. (R. 33 ¶ 18.) By the same rule applicable to Carolyn's, Markel is therefore a citizen of England, Wales, and Virginia.

affirmatively plead the citizenship of every member Name of Lloyd's Syndicate 958 in order to adequately allege diversity of citizenship. (R. 39, Defs.' Mem. at 5-6.) Having not done so, Defendants argue, Plaintiffs have failed to establish this Court's subject-matter jurisdiction. (*Id.*)

In *Indiana Gas*, the U.S. Court of Appeals for the Seventh Circuit held that "underwriting syndicates at Lloyd's of London must be treated like limited partnerships for purposes of determining their citizenship when jurisdiction depends on 28 U.S.C. § 1332." 141 F.3d at 320. Limited partnerships are citizens of "every jurisdiction of which any partner is a citizen," so by analogy a Lloyd's underwriting syndicate "has the citizenship of each participating '[N]ame'." *Id.* at 316, 320; *see also Dexia Crédit Local v. Rogan*, 629 F.3d 612, 619 (7th Cir. 2010) (explaining that *Indiana Gas* held that "all of the members belonging to a Lloyd's of London syndicate ha[ve] to be considered for purposes of diversity jurisdiction"). According to the Seventh Circuit, this treatment of Lloyd's underwriting syndicates necessarily follows from the "general rule" laid down by the U.S. Supreme Court that "*every* association of a common-law jurisdiction other than a corporation is to be treated like a partnership." *Ind. Gas*, 141 F.3d at 316-17 (discussing *Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990)).

Plaintiffs do not affirmatively allege in the SAC the identity or citizenship of any Names participating in Syndicate 958. They instead summarily allege that none of the Names are citizens of Illinois (Plaintiffs' state of citizenship): "The syndicate involved for Lloyd's in this matter is Syndicate 958 which *contains no corporations or individuals that are citizens of Illinois.*" (R. 33, Second Am. Compl. ¶ 19 (emphasis added).) Accepting this jurisdictional allegation as true—which this Court must, *Evers*, 536 F.3d at 656—would seem to establish diversity: if none of the Names are citizens of Illinois, then Syndicate 958 is entirely diverse from the Illinois-citizen Plaintiffs. But it is unclear whether a generalized jurisdictional

allegation like this—*i.e.*, "no member of the defendant is a citizen of [State X]"—suffices to establish diversity. As noted, *Indiana Gas* held that for purposes of diversity jurisdiction a Lloyd's underwriting syndicate inherits the plural citizenship of all participating Names. 141 F.3d at 320. It did not hold that the citizenship of every participating Name must be specifically alleged in order to establish diversity.[6] Nevertheless, that is how several district courts in this Circuit appear to have read *Indiana Gas*. *See Atrium 5 Ltd. v. Butchee*, No. 16-cv-0003, 2017 WL 325646, at *3-4 (S.D. Ill. Jan. 5, 2017) (relying on *Indiana Gas* to require the plaintiff to "identify the citizenship of all Names" in a Lloyd's syndicate in order to establish diversity jurisdiction); *Intra Am. Metals, Inc. v. Certain Underwriters at Lloyd's London*, No. 1:13-cv-1117, 2014 WL 545899, at *1-3 (S.D. Ind. Feb. 7, 2014) (explaining that in light of *Indiana Gas*, "[i]n order to establish [the court's] subject-matter jurisdiction over this case, Defendant must . . . set forth the citizenship of all 'names' subscribed to Syndicate 958");[7] *Lane Tone Int'l Material, Inc. v. Certain Underwriters of Lloyd's, London*, No. 1:10-cv-922, 2012 U.S. Dist. LEXIS 80546, at *1-4 & n.1 (S.D. Ind. June 8, 2012) (rejecting general jurisdictional allegation that no Names in Lloyd's syndicate were citizens of Indiana and remanding suit to state court

---

[6] *Indiana Gas* resolved the question of diversity on the ground that one of the Names at issue there was *in fact* not diverse from the plaintiffs. 141 F.3d at 317-19 ("After a search of their records, the London Market Insurers inform us that 'there is at least one subscribing name who was domiciled in Indiana as of the date of the filing of the Complaint.' . . . . Citizens of Indiana are on both sides of this case, which therefore may not be maintained under § 1332."). As a result, the Seventh Circuit did not have occasion to address the level of specificity with which a complaint must plead the citizenship of a Lloyd's underwriting syndicate.

[7] It appears that *Intra American Metals* involved the same Lloyd's underwriting syndicate that is a Defendant here—Syndicate 958. There, a declaration was submitted to the court purporting to list 1,873 Names participating in Syndicate 958. *See* 2014 WL 545899, at *3. It is not clear why the list proffered in *Intra American Metals* indicated that 1,873 Names belonged to Syndicate 958, while Defendants assert here that Syndicate 958 comprises 1,777 Names. (R. 41, Defs.' Reply at 3 n.1.) The Court notes this discrepancy only because it suggests that there is some additional, non-obvious features to Lloyd's syndicates—perhaps membership in a particular Lloyd's syndicate can vary over time or the syndicate number alone does not uniquely identify a particular syndicate.

based on *Indiana Gas*, explaining that "diversity jurisdiction cannot be established by asserting that no members [of the syndicate] are citizens of the opposing party's state"). The U.S. Court of Appeals for the Eleventh Circuit read *Indiana Gas* the same way when it held in *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010), that Lloyd's insurance underwriting syndicates could not "properly invoke [a] district court's diversity jurisdiction without pleading the citizenship of each of their member Names." *Id.* at 1081, 1086. The Eleventh Circuit held that to sufficiently allege diversity, "Lloyd's syndicates . . . must plead the citizenship of each of their members," *id.* at 1081, and observed that this holding was in accord with the Seventh Circuit's decision in *Indiana Gas*, *id.* at 1089.

The sole exception in this Circuit appears to be *Certain Underwriters at Lloyd's, London v. Johnson & Bell, Ltd.*, No. 10-cv-7151, 2011 WL 3757179 (N.D. Ill. Aug. 25, 2011). There, the plaintiff, a Lloyd's underwriting syndicate, had alleged only generally that each of its Names "ha[s] a principle [sic] place of business in London, England" and that "[n]one . . . are domiciled in the State of Illinois." *Id.* at *2. The complaint did not specifically allege the citizenship of every Name in the syndicate. *Id.* The defendant moved to dismiss for lack of subject-matter jurisdiction, arguing that the syndicate "fail[ed] to plead the citizenship of each of its members and thus . . . failed to establish complete diversity." *Id.* The court cited *Indiana Gas* for the proposition that "underwriting syndicates have the citizenships of every name," *id.* (citation omitted), but did not read the case to require that the syndicate affirmatively plead the citizenship of every Name. Instead, because the defendant did not dispute the truth of the syndicate's jurisdictional allegations, the court deemed them sufficient to establish diversity. *Id.*

This Court concludes that in order to establish diversity of citizenship as to a Lloyd's underwriting syndicate, the citizenship of every participating Name must be affirmatively

alleged. Two Seventh Circuit cases dealing with the citizenship of limited partnerships—which, as noted, is how Lloyd's syndicates are classified for jurisdictional purposes—are particularly instructive in resolving this issue: *Guaranty National Title Co. v. J.E.G. Associates*, 101 F.3d 57 (7th Cir. 1996), and *America's Best Inns, Inc. v. Best Inns of Abilene, L.P.* ("*America's Best*"), 980 F.2d 1072 (7th Cir. 1992) (per curiam). In *Guaranty National Title*, the plaintiff brought a diversity suit in this Court alleging as to the defendant's citizenship only that it was "a limited partnership whose principal place of business is in Boston, Massachusetts." 101 F.3d at 58. The complaint did not allege the identity or citizenship of the constituent partners, which the Seventh Circuit explained were "vital bits of information because a limited partnership has the citizenships of each partner." *Id.* Without this information, the Seventh Circuit explained, "the record as it stood in the district court did not support the assertion of federal jurisdiction." *Id.* On appeal, the plaintiff's brief elaborated that the partners "are all citizens of the State of Massachusetts." *Id.* While the Seventh Circuit noted that this assertion, if true, "would suffice" to establish diversity, it was still too generalized; the court insisted that "it [was] essential to *put into the record the name and citizenship of each partner*." *Id.* (emphasis added). In a post-argument jurisdictional statement, the parties tried but still failed to properly identify the citizenship of every partner, as a result of which the Seventh Circuit vacated this Court's judgment on the merits and ordered the case dismissed for want of jurisdiction. *Id.* at 58-59.

Similarly, in *America's Best*, the plaintiff filed a diversity suit identifying the defendant in its complaint simply as "a Kansas limited partnership" for purposes of jurisdiction. 980 F.2d at 1073. The suit proceeded to trial and judgment without either party establishing the identity or citizenship of all the partners in the partnership. *Id.* On appeal, the Seventh Circuit instructed the parties that in order to establish complete diversity, "it would be necessary to enlarge the record

to show the citizenship of every partner as of the date the complaint was filed." *Id.* In post-argument jurisdictional affidavits, the defendant asserted that "each of [its] limited partners . . . was a resident of Kansas," and the plaintiff asserted that "none of the limited partners of [defendant] were citizens of the State of Illinois nor of the State of Delaware"—the plaintiff's dual states of citizenship. *Id.* The court rejected both allegations as insufficient to establish diversity and remanded the case with orders to dismiss for lack of jurisdiction, in part because "neither of the affidavits identifie[d] the limited partners." *Id.* The citizenship allegations were, in the Seventh Circuit's view, too generalized: "It is impossible to determine diversity of citizenship without knowing who the persons in question are." *Id.* The plaintiff's assertion that none of the defendant's constituent limited partners were citizens of either Illinois or Delaware was a "vacuous statement"; the court explained that "litigants instructed to specify the partners and their citizenship may not respond with . . . 'no partner is a citizen of Illinois.' How can anyone tell?" *Id.* Instead, when alleging the citizenship of partnerships, "litigants must be precise." *Id.*

The implication of *Guaranty National Title* and *America's Best* is that to establish subject-matter jurisdiction based on diversity of citizenship where the defendant is a limited partnership, the record must affirmatively reflect the identity and citizenship of every partner; it is insufficient for parties to put forward, or for a court to accept, a generic statement summarily alleging that no partner is a citizen of the plaintiff's state(s) of citizenship. *Accord* 20 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE DESKBOOK § 73 ("Nor is it enough to allege that plaintiff is a citizen of state X and that defendant is not a citizen of state X[.]"). That, however, is the character of Plaintiff's jurisdictional allegation concerning Lloyd's Syndicate 958: "The syndicate involved for Lloyd's in this matter is Syndicate 958 which contains no

corporations or individuals that are citizens of Illinois." (R. 33, Second Am. Compl. ¶ 19.) Plaintiffs' generalized allegation is thus insufficient to establish diversity; it is instead "essential to put into the record the name and citizenship" of each Name participating in Syndicate 958.[8] *Guar. Nat'l Title*, 101 F.3d at 58.

Two additional considerations warrant this conclusion. First, requiring a complaint to specifically allege the citizenship of every Name in a Lloyd's underwriting syndicate is the only way for a court to satisfy its paramount obligation to ensure subject-matter jurisdiction is proper under § 1332. "Ensuring the existence of subject-matter jurisdiction is the court's first duty in every lawsuit." *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005); *see also Scott Air Force Base Props., LLC v. Cty. of St. Clair, Ill.*, 548 F.3d 516, 520 (7th Cir. 2008) ("[I]t is axiomatic that a federal court must assure itself that it possesses jurisdiction . . . before it can proceed to take any action respecting the merits[.]" (citation omitted)). This duty is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (citation omitted). Indeed, the Seventh Circuit has repeatedly "remind[ed] the bench and bar of this circuit that it is their nondelegable duty to police the limits of federal jurisdiction with meticulous care." *Mkt. St. Assocs. Ltd. P'ship v. Frey*, 941 F.2d 588, 590 (7th Cir. 1991); *see also Meyerson v. Harrah's E. Chi. Casino*, 299 F.3d 616, 617 (7th Cir. 2002) (per curiam) ("[W]e must once again enjoin upon

---

[8] The Court notes that district courts in this Circuit have frequently applied the same rule to other unincorporated associations such as limited liability companies (LLCs) and partnerships. *See, e.g., Kruse v. Goldman Sachs & Co.*, No. 110-cv-323, 2010 WL 3720204, at *2 (N.D. Ind. Sept. 15, 2010) ("Thus, the court needs to know the names and citizenship of [the limited partnership defendant's] partners."); *Kerry Inc. v. Mid-Am. Cold Storage, L.L.C.*, No. 09-537, 2009 WL 3111216, at *1 (S.D. Ill. Sept. 24, 2009) ("If [defendant] is in fact a limited liability company as alleged, the Court must know the citizenship of each of its members."); *Kehrer Bros. Constr. v. Custom Body Co.*, No. 05-cv-246, 2007 WL 1189370, at *1 (S.D. Ill. Apr. 20, 2007) ("Plaintiff's proposed [complaint] . . . merely states, '[u]pon information and belief, none of the members of [defendant] are Illinois residents or citizens.' Yet again, this allegation will not suffice to properly establish the citizenship of an LLC. Plaintiff must specifically [identify the] name and citizenship of each and every member comprising each defendant LLC."); *Palmer v. Astrazeneca Pharm., L.P.*, No. 06-71, 2006 WL 294783, at *1 (S.D. Ill. Feb. 7, 2006) ("If [defendant] is in fact a limited partnership, the Court must know the citizenship of each of its members.").

bench and bar alike the importance of scrupulous adherence to the limitations on the subject-matter jurisdiction of the federal courts."). More specifically, the Seventh Circuit has warned that in diversity cases, a court must be wary of jurisdictional hazards whenever there is an "unconventional party," meaning "someone or something other than either a natural person suing in his own rather than a representative capacity, or a business corporation," in which case "a jurisdictional warning flag should go up." *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *see also Frey*, 941 F.2d at 590 (warning courts to "be particularly alert for jurisdictional problems in diversity cases in which one or more of the parties is neither an individual nor a corporation"). Lloyd's underwriting syndicates are no doubt "unconventional parties" that raise a "jurisdictional warning flag" in that they are neither natural persons suing in their own capacity nor *de jure* business corporations. *Cosgrove*, 150 F.3d at 731.

Given the composition of Lloyd's syndicates, the risk of jurisdictional hazards when they are parties is particularly acute. As noted, each syndicate can have hundreds or thousands of Names that are located throughout the world.[9] *Ind. Gas*, 141 F.3d at 316. And it is well known that the ranks of Names include thousands of individuals located in the United States.[10] *See Ashenden I*, 934 F. Supp. at 993; *see also Richards v. Lloyd's of London*, 135 F.3d 1289, 1291-92 (9th Cir. 1998) ("Appellants, all citizens or residents of the United States, are more than 600 'Names' who entered into underwriting agreements."); *Certain Underwriters at Lloyd's, London v. P.J.T., Inc.*, No. 96 C 3628, 1996 WL 377081, at *2 (N.D. Ill. June 27, 1996) ("It has become well known indeed that many United States citizens are among the syndicate members (the

___

[9] By way of example, Defendants assert—and Plaintiffs do not dispute —that Syndicate 958 comprises 1,777 Names. (R. 41, Defs.' Reply at 3 n.1.)

[10] Indeed, "Supreme Court Justice Stephen Breyer . . . revealed his substantial involvement in such investments (now divested) as part of his statutorily-required financial disclosure" after he was nominated to the Supreme Court. *Certain Underwriters at Lloyd's, London v. P.J.T., Inc.*, No. 96 C 3628, 1996 WL 377081, at *2 (N.D. Ill. June 27, 1996).

'Names') who invest in the marketplace provided by Lloyd's.").[11] There is thus a distinct and non-trivial probability that at least one Name in a given syndicate will be a citizen of the same U.S. state as an adverse party, thereby destroying diversity. The probability increases significantly if any Name is itself a partnership or other unincorporated association because such Names have the multiple citizenships of each of *their* constituent partners or members—and so on if there is further nesting of business organizations.[12] *See Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003) ("[T]he citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." (citation omitted)). In short, the unique and potentially labyrinthine composition of Lloyd's syndicates dictates caution before concluding that diversity exists under § 1332.

The second, related consideration supporting this Court's conclusion is that the Seventh Circuit has over the years unflinchingly policed the bounds of subject-matter jurisdiction under § 1332(a). It has, for example, regularly questioned the presence of complete diversity *sua sponte* on appeal and vacated judgments on the merits—with instructions to dismiss for want of jurisdiction—when diversity was not properly alleged or the parties were not actually diverse.

---

[11] Indeed, the effort by Lloyd's to recruit many U.S. investors as Names in the 1980s precipitated a litany of securities fraud lawsuits against it in this country. *Ashenden I*, 934 F. Supp. at 993 ("This action is one of many arising from the recruitment of U.S. investors into Lloyd's during the roaring 1980s at a time when Lloyd's financial health was faltering[.]"); *see also, e.g., Richards*, 135 F.3d at 1291-92 ("Appellants, all citizens or residents of the United States, are more than 600 'Names' who . . . claim that Lloyd's actively sought the investment of United States residents to fill an urgent need to build up capital [but] concealed information regarding the possible consequences of the risks undertaken and deliberately and disproportionately exposed the Names to massive liabilities for which sufficient underwriting capital or reinsurance was unavailable.").

[12] And it appears common for Lloyd's Names to be business organizations rather than natural persons. In *Intra American Metals*, for example, many of the Names subscribing to the Lloyd's syndicate at issue were themselves limited liability partnerships (LLPs), which take the citizenship of each constituent partner. 2014 WL 545899, at *3-4. And here, Defendants relate that "many of the Names [in Syndicate 958] are limited liability partnerships, limited partnerships and other foreign business organizations with the designation of 'Ltd.'" (R. 41, Defs.' Reply at 3 n.1.)

*See, e.g.*, *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 693-94 (7th Cir. 2003) (vacating judgment on jury verdict and remanding with instructions to dismiss for want of subject-matter jurisdiction, finding that parties presented incomplete and incorrect allegations of diversity and that the judge "should have checked" the allegations independently because "inquiring whether the court has jurisdiction is a federal judge's first duty in every case"); *Hart*, 336 F.3d at 542-44 (vacating judgment and remanding with instruction to dismiss for lack of jurisdiction where "the [citizenship] of a partnership . . . was left unresolved until after oral arguments before this court, and where, now that [it] is finally resolved, it turns out there is no complete diversity of citizenship between the parties"); *Guar. Nat'l Title*, 101 F.3d at 59 (vacating judgment with instruction to dismiss for lack of subject-matter jurisdiction); *Am.'s Best Inns*, 980 F.2d at 1074 (same).

This Court sees no reason to be any less exacting than the Seventh Circuit, particularly because subject-matter jurisdiction is never waived, meaning that jurisdictional defects that go unnoticed will imperil any judgment on the merits. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." (citation omitted)). Overlooking jurisdictional defects now could potentially lead to an extraordinary waste of federal judicial resources. *Hart*, 336 F.3d at 542-44 (lamenting the "waste of federal judicial resources" that occurred where citizenship of a partnership was left unresolved until after oral argument on appeal). In sum, in order to establish diversity of citizenship as to Lloyd's Syndicate 958, Plaintiffs must affirmatively allege the citizenship of every participating Name.

## II.     Treating Lloyd's Syndicate 958 as a Corporation

As noted, Plaintiffs argue in response to Defendants' motion that Lloyd's Syndicate 958 should be treated as a corporation rather than a limited partnership. (R. 40, Pls.' Resp. at 8-12.) A

corporation is a citizen of the state(s) where it is incorporated and where it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). If treated as a corporation, Syndicate 958 would be diverse from Plaintiffs because, according to their allegations, it is incorporated in England and has its principal place of business in London, England. (R. 33, Second Am. Compl. ¶ 19.) Plaintiffs reason that Lloyd's syndicates resemble corporations in various ways and should therefore be treated as such for jurisdictional purposes. (R. 45, Pls.' Sur-reply at 6.) This argument is unavailing. Whatever the similarities, treating Lloyd's underwriting syndicates as corporations is squarely foreclosed by *Indiana Gas*, which held that they are to be treated as limited partnerships. 141 F.3d at 320. It is also foreclosed by a long line of Supreme Court cases that have "firmly resisted" treating unincorporated entities the same as corporations for purposes of jurisdiction. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990) (discussing cases); *see also Ashenden I*, 934 F. Supp. at 998 ("[N]o matter how corporation-like an entity may be in its structure or operations, if it is not incorporated, the Supreme Court has generally refused to accord it the separate citizenship enjoyed by corporations under 28 U.S.C. § 1332(c).").

Plaintiffs argue nevertheless that this Court previously addressed the citizenship of Lloyd's syndicates and treated them as corporations for purposes of diversity jurisdiction in *Ashenden I*. (R. 40, Pls.' Resp. at 9.) Plaintiffs wholly misread *Ashenden I*. As Defendants correctly note, that case dealt with the citizenship of the Corporation (or Society) of Lloyd's, the incorporated entity that oversees the insurance marketplace at Lloyd's, not any Lloyd's underwriting syndicates. (R. 41, Defs.' Reply at 4.) Indeed, this Court expressly noted in *Ashenden I* that "[n]o syndicates are defendants here." 934 F. Supp. at 995 n.2. This Court's evaluation of how to classify the Corporation of Lloyd's, the incorporated entity, for purposes of diversity jurisdiction is thus not applicable. Notably, this Court also observed that in several

decisions outside this Circuit, "[t]he insurance syndicates that operate *within* Lloyds of London . . . have been determined to be unincorporated associations with citizenship determined by all of their members," *id.*—the very same rule later adopted by the Seventh Circuit in *Indiana Gas*. In short, Plaintiffs' argument that Lloyd's syndicates should be treated as corporations finds no support in *Ashenden I*.

The same goes for *Society of Lloyd's v. Reinhart*, 402 F.3d 982, 1002 (10th Cir. 2005), which Plaintiffs claim "reaffirmed" this Court's decision in *Ashenden I* (purportedly) to treat Lloyd's syndicates as corporations. (R. 40, Pls. Resp. at 9.) Like *Ashenden I*, however, *Reinhart* dealt with the Corporation of Lloyd's, the incorporated entity; no underwriting syndicates were parties. 402 F.3d at 986, 988. *Reinhart* was a suit by the Corporation of Lloyd's against several American Names seeking to enforce, in the U.S., money judgments obtained against the Names in England. *Id.* at 986. One of the Names disputed the existence of complete diversity, claiming that the Corporation of Lloyd's—again, the incorporated entity—should be treated as an association that inherits the citizenship of multiple underwriting syndicates. *Id.* at 1002. The U.S. Court of Appeals for the Tenth Circuit rejected this theory, relying in part on this Court's analysis in *Ashenden I. Id.* Nowhere does *Reinhart* hold that Lloyd's underwriting syndicates such as Syndicate 958 are to be treated as corporations. Even if *Reinhart* did reach such a conclusion, this Court would be bound to follow *Indiana Gas* over a Tenth Circuit decision. Thus, the Court rejects Plaintiffs' argument that Lloyd's underwriting syndicates should be treated as corporations for purposes of diversity jurisdiction.

### III.    Whether Syndicate 958 Is the Defendant

Plaintiffs also seem to argue that they are not actually suing a Lloyd's underwriting syndicate, maintaining that "Lloyd's, [the] English corporation, is named as Defendant" and "Syndicate 958 is for clarification purposes." (R. 40, Pls.' Resp. at 4.) Plaintiffs do not elaborate

much, except to assert that they "did not sue Syndicate 958" at the outset of this case and amended the complaint as they did—ultimately naming "Certain Underwriters at Lloyd's, London Subscribing to Certificate No. LL-41973, Syndicate 958" as a defendant—only because "Lloyd's was complaining that the syndicate number was not identified." (*Id.* at 8.) By claiming that they are actually suing the Corporation of Lloyd's, Plaintiffs presumably seek to sidestep the requirement to plead the citizenship of all the Names in Syndicate 958.

It is hard to know what to make of this argument. Contrary to Plaintiffs' assertions, neither the SAC nor any of Plaintiffs' preceding complaints name the Corporation of Lloyd's as a defendant, nor do they use any of the alternative designations that commonly appear in cases where it is a party—*i.e.*, "Society of Lloyd's" or "Lloyd's of London," *see Estate of McMurray*, 274 F.3d 1133 ("The Society of Lloyd's"); *Ashenden II*, 233 F.3d 473 ("The Society of Lloyd's"); *Ashenden I*, 934 F. Supp. 992 ("Lloyd's of London"). Instead, Plaintiffs' complaints in this case have all denominated the Lloyd's defendant as some variation on "Underwriters at Lloyd's, London." (R. 1, Compl. at 1 ("Underwriters at Lloyd's, London"); R. 27, First Am. Compl. at 1 ("Certain Underwriters at Lloyd's, London Subscribing to Certificate No. LL-41973"); R. 33, Second Am. Compl. at 1 ("Certain Underwriters at Lloyd's, London Subscribing to Certificate No. LL-41973, Syndicate 958").) Plaintiffs seem to believe that, nomenclature aside, the Lloyd's Policy was in fact issued and underwritten by the Corporation of Lloyd's rather than Syndicate 958. But as explained earlier, the Corporation of Lloyd's does not itself underwrite insurance; that activity is carried out by the syndicates. *See Estate of McMurray*, 274 F.3d at 1134; *Ashenden II*, 233 F.3d at 478. It is not, of course, immutable fact that the Corporation of Lloyd's does not engage in insurance underwriting, and Plaintiffs are free to name as a defendant whomever they believe is the true counterparty on their insurance policy.

But they have not named the Corporation of Lloyd's here, and as Defendants point out, the cover page of the Lloyd's Policy itself states that "[t]his Insurance is effected with *Certain Underwriters at Lloyd's, London* (*not incorporated*)."[13] (R. 41-2, Lloyd's Policy Cover Page (emphasis added).) The policy goes on to state that "[t]his Certificate is issued in accordance with the limited authorization granted . . . by *certain Underwriters at Lloyd's, London* . . . whose syndicate numbers and the *proportions underwritten by them* can be ascertained from the office of the said Correspondent." (*Id.* (emphases added).) It is thus not clear on what basis Plaintiffs could claim that the Corporation of Lloyd's is the correct counterparty on the Lloyd's Policy. In any event, this Court need not resolve for Plaintiffs who they should be naming as a defendant, so it declines to address the issue further. *See Gingerich v. City of Elkhart Prob. Dep't*, 273 F.R.D. 532, 537 (N.D. Ind. 2011) ("[T]he burden of identifying the proper defendant is one the plaintiff carries."). The Court rejects Plaintiffs' argument that Lloyd's Syndicate 958 is not a named defendant.

## IV.    Plaintiffs' Request for Fees

As a final matter, Plaintiffs present a request for fees in their sur-reply on the ground that Defendants' motion to dismiss was "improper" and "unnecessarily prolonged this litigation and caused additional expense." (R. 45, Pls.' Sur-reply at 9-10.) Plaintiffs complain more specifically that Defendants: (1) "did not set forth in their original motion to dismiss that [they would be] relying on extrinsic evidence"[14] in their reply brief, which Plaintiffs claim necessitated the extra cost and effort of a sur-reply; and (2) declined to provide a list of Syndicate 958's Names and

---

[13] Notwithstanding that Defendants raise only a facial challenge to subject-matter jurisdiction, the Court is free to consider the contents of the Lloyd's Policy because it was attached to the SAC. *See Williamson*, 714 F.3d at 436; *see also* FED. R. CIV. P. 10(c).

[14] More specifically, Plaintiffs refer to excerpts from the textbook "Introduction to Lloyd's Market Procedures and Practices" that Defendants attached to their reply brief. The Court is aware of the textbook excerpts but did not rely on them in deciding Defendants' motion.

their addresses to Plaintiffs without a confidentiality agreement between the parties. (*Id.*) Although not entirely clear, Plaintiffs appear to base their request on 28 U.S.C. § 1927, which authorizes shifting fees and costs when attorneys "multipl[y] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Application of section 1927 is not warranted here. Defendants' six-page motion succinctly raised a meritorious argument based on directly relevant Seventh Circuit authority. It is clear to the Court that the complained-of extrinsic evidence was offered in response to Plaintiffs' evident confusion about the nature and composition of "Lloyd's"—confusion that persisted in Plaintiffs' sur-reply, where they continued to conflate the Corporation of Lloyd's with Lloyd's insurance underwriting syndicates and misapprehend the relevance of this Court's decision in *Ashenden I*. The Court also finds no fault in Defendants' desire to maintain some degree of confidentiality for Syndicate 958's Names. *See Meyerson v. Showboat Marina Casino P'ship*, 312 F.3d 318, 321 (7th Cir. 2002) ("We gather that [defendant] wants to keep its ownership secret. That is its owners' right[.]"). Plaintiffs' request for fees under 28 U.S.C. § 1927 is denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss (R. 38). Because Plaintiffs may be able to cure their deficient jurisdictional allegations in a revised pleading, the Court GRANTS Plaintiffs leave to amend to properly allege the citizenship of Lloyd's Syndicate 958. The Court will give Plaintiffs until August 4, 2017 to file any proposed amended complaint or proceed to litigate this dispute in any other appropriate venue.

ENTERED:  _____
Chief Judge Rubén Castillo
United States District Court

Dated: May 4, 2017